UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE HOLSTROM,

                                      **DECISION AND ORDER**

                        Plaintiff,                      1:19-CV-00445(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Disability Insurance Benefits ("DIB") for the period of January 9, 2012, through November 25, 2014. Before the court are the parties' cross-motions for judgment on the pleadings [7, 10].[1] The parties have consented to my jurisdiction [12]. Having reviewed the parties' submissions [7, 10, 11], the case is remanded for further proceedings consistent with this Decision and Order.

**BACKGROUND**

        The parties' familiarity with the 502-page administrative record is presumed. On October 21, 2014, plaintiff, who was 58 years old, applied for DIB from a disability commencing on January 9, 2012, due to, *inter alia*, cervical disc disease, stenosis, rheumatoid arthritis ("RA"), "fingers crooked", and "right handed – drops things unable to lift heavy things". Administrative

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

record [6], pp. 188-89, 213-16.[2]  Plaintiff was determined to be disabled as of November 26, 2014.  Id., pp. 79-81.  Since plaintiff sought an earlier onset date, an administrative hearing was conducted before Administrative Law Judge ("ALJ") Hortensia Haaversen on July 6, 2017, at which plaintiff, who was represented by counsel, and a vocational expert, testified.  Id., pp. 29-64.

        Plaintiff underwent cervical spine surgery approximately 20 years ago.  Id., pp. 325.  She worked since 2003 at a supermarket, first as a deli clerk and then as the night deli manager.  Id., pp. 36-37.  Although plaintiff alleged a January 2, 2012 onset date, she testified that she ceased working shortly thereafter, not due to her impairments, but rather because she was fired from her employment as a deli counter manager following a physical altercation between her and a co-worker.  Id., pp. 15, 39-41.  Shortly thereafter, she saw her physician for a sore neck, but an MRI revealed no "no specific injury to the neck", and she remained sore for approximately two months.  Id., pp. 42-43.

        The medical evidence thereafter continued to show no limitations. As the Commissioner notes, a December 16, 2012 visit to the emergency room for vertigo revealed that plaintiff's musculoskeletal system had normal range of motion and strength, and no deformity, swelling or tenderness.  Id., pp. 281-83.  The examination also revealed "[n]o focal neurological deficit".  Id., p. 283.

        A July 2013 MRI showed mild to moderate foraminal stenosis, but no treatment during that time period.  Id., p. 16.  Plaintiff's November 20, 2013 physical revealed that she was "feeling well", had full range of motion in his neck, "5/5 normal muscle strength - all muscles", normal posture and gait, and no joint swelling or deformity.  Id., pp. 17, 303-05.

---

[2]    Plaintiff had filed multiple previous applications that were unsuccessful. [7], p. 15.

Plaintiff appears to have first complained of joint pain on December 13, 2013, and was prescribed Tramadol. Id., pp. 297-98. Yet, by December 31, 2013, she indicated that it the pain was controlled and that she "feels well", and continued to report in April 2014 that Tramadol helped with the pain, that she "fe[lt] well", and "denie[d] complaints", other than that "cold weather cause[d] pain". Id., pp. 17, 291, 295.

On May 16, 2014, plaintiff complained that Tramadol was no longer effective. Id., p. 285. Specifically, it was noted that she

> "drops objects and can't grip objects, spills cups of fluid pain deep and sharp in low back shoots down both legs on average 8/10 – tramadol and gabapentin brings pain to 6-7/10 can't lift bag of flour or bend over and pick up things off floor takes about 1 hour to get moving in the morning". Id.

Many of these complaints were confirmed during plaintiff's medical examination on November 24, 2014, where it was noted that she had muscle weakness, antalgic gait (described as "labored and slow"). Id., pp. 381-85. A straight leg raise test was positive bilaterally. Id., p. 384. Neurologically, plaintiff displayed numbness, tingling, paresthesia, and weakness. Id., p. 382. This was followed shortly thereafter by plaintiff sustaining a fractured ankle on November 26, 2014.

On February 9, 2015, Samuel Balderman, M.D. conducted a consultative internal medical examination, finding "[m]oderate limitation in changes of position of the head. Moderate limitation in use of the hands for gross motor work . . . . [M]arked limitation for prolonged walking or climbing for three months due to recent ankle fracture". Id., p. 328. Dr. Balderman also determined that plaintiff's "[f]ine motor work was intact". Id.

Based on the record, ALJ Haaversen affirmed the determination that plaintiff's disability began on November 26, 2014. In reaching that determination, he found that prior to

November 20, 2013, plaintiff had no severe impairments, explaining that "there is simply insufficient evidence in order to make a decision". [6], p. 13.  Thereafter, he found that plaintiff's severe impairments were degenerative joint disease, cervical disc disease, and RA. Id. ALJ Haaversen determined that through November 25, 2014, plaintiff had the residual functional capacity ("RFC") to perform light work, with a variety of limitations, including, *inter alia*, "frequent[ ] use [of] the bilateral hands for gross manipulation and handling" and "avoid concentrated exposure [to] extreme cold, wetness, and humidity per her testimony".  Id., p. 14.

In reaching that determination, ALJ Haaversen gave "some weight" to Dr. Balderman's opinion, explaining that

> "[t]hrough November 25, 2014, the consultative examiner had not yet examined the claimant and had only the medical record to rely upon. Through that date, and at the time of the consultative examiner's review of the case, there was very limited evidence to consider. . . . Additionally, through November 25, 2014, the claimant had not yet fractured her ankle . . . The consultative examiner's opinion has been considered to the extent that it was supported by and consistent with the evidence of record through November 25, 2014." Id., p. 17 (emphasis omitted).

Based upon plaintiff's RFC and the testimony of the vocational expert, ALJ Haaversen concluded that plaintiff was capable of performing her past relevant work as a deli clerk and deli clerk night manager. Id.  Therefore, he found that plaintiff was not disabled from January 9, 2012, the alleged onset date, through November 25, 2014. Id., p. 18.  The Appeals Council denied plaintiff's request for review (id., pp. 1-5), and thereafter she commenced this action.

## DISCUSSION

In seeking remand, plaintiff argues that ALJ Haaversen failed to properly assess plaintiff's onset date and plaintiff's limitations in handling and fingering due to her degenerative joint disease. Plaintiff's Memorandum of Law [7-1], §§I and II.

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B.   Did ALJ Haaversen Err in Addressing the Onset Date of Plaintiff's Disability?

Plaintiff argues that ALJ Haaversen committed legal error by rejecting "any medically determinable impairments prior to November 2013 because 'there is simply insufficient evidence in order to make a decision'", and made a factual error by simply relying on her November 2013 physical examination, "the earliest treatment record from Dr. Kucera", and disregarding plaintiff's July 2013 MRI. Plaintiff's Memorandum of Law [7-1], pp. 7-10.

She also argues that ALJ Haaversen's determination that her disability onset date was November 26, 2014, was arbitrary and that the opinion of a medical advisor should have been obtained. Id.

A "severe" impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities". 20 C.F.R. §404.1520(c). An impairment or combination of impairments is "not severe" when medical evidence establishes "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on [the claimant's] ability to work even if the [claimant's] age, education, or work experience were specifically considered (i.e., the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." SSR 85–28, 1985 WL 56856, at *3 (1985).

As the Commissioner argues, ALJ Haaversen did not find that plaintiff had no impairments prior to November 20, 2013, only that they did not constitute "severe" impairments during that timeframe. Commissioner's Brief [10-1], p. 14. The evidence in the record, including the July 2013 MRI, indicated that plaintiff had degenerative joint disease and RA. However, "a diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities". Durgan v. Astrue, 2013 WL 1122568, *3 (N.D.N.Y.), adopted, 2013 WL 1104143 (N.D.N.Y. 2013). As set forth above, there is no evidence prior to November 20, 2013 demonstrating the severity of plaintiff's limitations.

More persuasively, plaintiff argues that ALJ Haaversen erred in reaching the disability onset date. That date "is not the exact time of disability, but the date when it is most reasonable to conclude, from a legitimate medical basis, that the impairment suffered was sufficiently severe to prevent the individual from partaking in substantial gainful activity . . . .

-6-

The ALJ can infer an onset date of the day most reasonable to conclude disability, if it is supported by medical evidence." Lockwood v. Colvin, 2014 WL 3894494, *10 (W.D.N.Y.), adopted, 2014 WL 4996429 (W.D.N.Y. 2014). "[D]etermining a claimant's disability onset date utilizes the same sequential analysis as determining whether that claimant was disabled pursuant to the five-step evaluation at some relevant point in the past." Cataneo v. Astrue, 2013 WL 1122626, *15 (E.D.N.Y. 2013).

In cases such as this, involving "disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." Social Security Ruling ("SSR") 83-20, 1983 WL 31249, *2.[3] "The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." Id. However, medical evidence is the "primary element" in determining the onset date. Id.

SSR 83-20 further provides that "the [onset] date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." Id. at *3. "If substantial evidence points to a basis for conclusion, the ALJ decision will be upheld." Lockwood, 2014 WL 3894494 at *10.

"SSR 83-20 plainly provides that where the medical evidence of record does not provide a *clear* onset date and the date must be inferred, the ALJ should seek the assistance of a medical expert to make this inference." Perry v. Berryhill, 2019 WL 105304, *5 (W.D.N.Y.

---

[3]  SSR 83-20 was rescinded, effective October 2, 2018, and replaced by SSR 18-1p and 18-2p. Here, the ALJ's decision was rendered prior to the effective date of the recession. Thus, SSR 83-20 continues to apply. *See* Land v. Commissioner of Social Security, 2020 WL 1329982, *3 n. 3 (M.D. Fla. 2020).

2019) (emphasis added). The ALJ may also call and rely upon the testimony of lay witnesses, such as a claimant's "family members, friends, and former employers," in determining an onset date. SSR 83-20, 1983 WL 31249 at *3.

The record demonstrates that plaintiff's onset date was not clear. Although the Commissioner argues that "it was not until November 2014, that Plaintiff complained of worsening pain that was not relieved by Tramadol" (Commissioner's Brief [10-1], p. 17), that is not borne out by the record. As discussed above, on May 16, 2014 plaintiff complained of significant pain and limitations. [6], p. 285 ("can't lift bag of flour or bend over and pick up things off floor takes about 1 hour to get moving in the morning"). Therefore, the record is ambiguous as to whether plaintiff's disability began at some point prior to November 26, 2014, and ALJ Haaversen should have retained the services of a medical advisor (or through other permissible means) to determine plaintiff's onset date.

**C.      Did ALJ Haaversen Fail to Properly Consider Plaintiff's Hand Limitations?**

Plaintiff argues, *inter alia*, that ALJ Haaversen failed to reconcile Dr. Balderman's opinion that she had a moderate limitation for gross motor work with her hands with the RFC. Plaintiff's Memorandum of Law [7-1], §II(B).[4]  ALJ Haaversen's opinion is silent on Dr. Balderman's moderate limitation in plaintiff's use of her hands for gross motor work. The Commissioner does not dispute that such limitation conflicts with the RFC, which assessed plaintiff with the ability to perform gross manipulation and handling frequently.

---

[4]      Plaintiff also argues that ALJ Haaversen erred by ignoring Nurse Vaccaro's purported opinion that plaintiff cannot perform fine more skills. Plaintiff's Memorandum of Law [7-1], p. 11. However, I agree with the Commissioner that that assessment was included in the "Problem List/Past Medical" section of the record, and therefore was not an opinion. Commissioner's Brief [10-1], p. 20. *See* [6], p. 285, 289, 292 ("Story: can't do find motor skills"); 385 (same).

Instead, the Commissioner again argues that "Plaintiff's impairments deteriorated in November 2014, such that she was complaining that she could not use her hands, was having trouble cooking, and felt weak and numb". Commissioner's Brief [10-1], p. 21.  However, as discussed above, those complaints are reflected in plaintiff's May 2014 treatment records, demonstrating that the deterioration occurred earlier. *See* [6], p. 285.  Moreover, as plaintiff argues, Dr. Balderman's opinion, though rendered three months after the onset date, "could still provide substantial evidence that related to the period at issue". Plaintiff's Memorandum of Law [7-1], p. 14 (*citing* Bettis v. Chater, 1996 WL 19214, *3-4 (E.D.N.Y. 1996)).

Without some explanation from ALJ Haaversen as to what extent ALJ Balderman's opinion concerning plaintiff's hand limitation was factored into the RFC and why, I do not conclude that the RFC is supported by substantial evidence. *See* Holder v. Saul, 2020 WL 1465863, *3 (W.D.N.Y. 2020) ("[w]ithout a proper explanation as to why the A.L.J. decided to adopt certain portions of the opinions to which he assigned 'significant weight' and reject other parts, the A.L.J.'s RFC determination . . . is not supported by substantial evidence"); Velez v. Berryhill, 2018 WL 4609110, *10 (S.D.N.Y. 2018) ("the ALJ's language describes what the ALJ did, but does not explain why [s]he did it").  Therefore, on remand, the ALJ shall also provide this explanation.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [7] is granted, the Commissioner's motion [10] is denied, and this matter is remanded for further proceedings

-10-

consistent with this decision and order.

**SO ORDERED**.

Dated: July 15, 2020

<u>/s/Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge
